## McAllister & Company v. Wisehart.

(Decided October 12, 1926.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Vendor and Purchaser.—Evidence of continued payments by plaintiff, after he learned of sale of portion of lots which he claimed to have purchased, held to warrant verdict for defendant, in action to recover such payments.

2. Vendor and Purchaser.—In action to recover payments made on land contract, evidence of things done by defendant to effect settlement out of court held incompetent on merits of controversy.

WILLIAM T. BASKETT for appellant.

ALLEN P. DODD for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

By his petition in equity herein appellee, James Wisehart, sought to recover from appellant, McAllister & Company, $730.00 which he had paid to it under a contract for the purchase of lots Nos. 133, 134, 135, 136, 137 and 138 of the resubdivision of lot No. 38 in University Place, upon the allegation that after he had contracted to purchase, pay for and accept conveyance of the lots from appellant it sold to another 50 feet off of the back end of them. The amount sought to be recovered was the amount appellee had paid under his contract of purchase. Issue was joined by appellant, and, upon the trial below, the chancellor adjudged appellee the relief sought. Hence the appeal.

From the opinion of the chancellor found in the record, the judgment appears to have been based upon the conclusion that there was no meeting of the minds of the parties so as to constitute a valid contract between them in the premises, and that the writing which they signed was so uncertain in its description of the lots that it was invalid as a contract for the sale of the land, under section 470, Kentucky Statutes, commonly referred to as the statute of frauds. Neither of the parties seem to have taken the position that they did not contract or that the contract sued on was insufficient under the section, supra, of our statutes. The cause of action was founded

on the written contract entered into by the parties. Its provisions were pleaded and it was filed with the petition as an exhibit. A rescission of the contract was expressly sought as part of appellee's relief and a recovery of the $730.00 paid under it was prayed, not upon the theory that the parties had not contracted or that the contract was invalid under the section, *supra,* of our statutes, but upon the theory that after contracting to sell the lots to him appellant had sold and conveyed a portion of them to another; thus putting it beyond its power to specifically perform. The cause of action set up in the petition was not defended by appellant upon the theory that it and appellee had not made a valid contract either for failure to bring their minds together on its terms, or for failure to comply with the statutes of frauds in executing the contract sued on and made a part of the petition, but upon the theory that it had not sold or conveyed to another any portion of the lots it had previously contracted to sell to appellee.

This seems to be the issue between the parties as made by the pleadings and proof: Appellee contends that the lots he purchased were of a minimum depth of 196 feet, while appellant contends that the lots were sold from a blue print of the subdivision which showed the maximum depth of the longest lot to be approximately 195 feet and the minimum depth of the shortest lot to be approximately 155 feet, with the understanding between the parties that a resurvey of the subdivision would be made in the near future which might slightly vary the depth of the lots, a copy of which would be furnished to appellee to show the final, definite location of the back line of the lots he was purchasing. That issue is drawn in both the pleadings and the evidence herein; and the evidence introduced for appellee tends to establish that appellant's agent who sold him the lots and who showed them to him in the course of the negotiations represented to him that under the resurvey that was to be made the minimum depth of the lots he was purchasing would be not less than 196 feet. The lots being purchased faced on Country Club road, which from the evidence runs in rather a sharp curve in passing them. Lot No. 138 runs from that road with the southern line of Eastern avenue, which traverses the subdivision at approximately a right angle from Country Club road. There is no controversy between the parties as to the width of the six lots, the

location of their front and side lines. The only controversy is as to the depth of the lots. Appellee's testimony that it was represented to him by the agent that the lots he was purchasing would have a minimum depth of 196 feet is supported by that of two other witnesses shown to be more or less interested. As for what was said between the parties the testimony for appellant is confined to that of a single witness, its agent, who represented it in the deal; but the record discloses other facts and circumstances relating to the transaction which, to this court, seem conclusive of the controversy. The contract for the purchase of the lots in question was entered into by the parties on January 14, 1922. As the lots of the subdivision were numbered lot No. 132 lies immediately behind the six lots purchased by appellee and it faces Eastern avenue. That lot and lot No. 131 were purchased by Will Cook in April following. It is the two lots sold by appellant to Cook which appellee contends contains a portion of the lots purchased by him. Beginning in September, 1922, Cook erected his dwelling house on his lots and appellee admits that soon thereafter he was notified of the fact and went upon the lots and saw where it was being built. Cook moved into his house in October and has lived there since. The uncontradicted evidence establishes that immediately after discovering where Cook was building his house appellee went to the office of appellant, where he was furnished a copy of the blue print showing the resurvey of the subdivision and of the lots he had purchased, which gave the exact dimensions of his lots, including their depth. It showed the maximum depth of the longest lot to be exactly 200 feet and the minimum depth of the shortest lot to be 150.30 feet. From the evidence it was furnished him not later than October, 1922. Appellee's contract provided that the lots he had contracted to purchase should be paid for in weekly installments of $5.00 each. After he was furnished with the copy of the blue print showing the depth of the lots he had purchased and that lots 131 and 132 which Cook had purchased were no part of his lots, he continued to make payments on his contract until October 20, 1924. An agent of appellant and the one who had sold him the lots called at his home during all of this time and made these weekly collections. The blue print showing the dimensions of the lots he purchased as

located by the original survey is admitted to have been used by appellant's agent in making the sale, and appellee admits that he examined it and that the front and side lines of the lots he purchased, as shown by it, are identical with the front and side lines as shown by the resurvey, a blue print showing which in detail he obtained in 1922. The only difference between the original survey and the resurvey, as shown by the undisputed evidence, is that whereas in the former the maximum depth of the longest lot was approximately 195 feet by the resurvey it was made 200 feet long, and the minimum depth of the shortest lot by the former was shown to be approximately 156 feet. By the resurvey it was made 150.30 feet. These undisputed facts seem to support the testimony for appellant that the six lots were sold to appellee from the blue print of the original survey with the understanding between them that the resurvey might slightly vary the location of the rear lines of the lots. It is wholly improbable that if appellee discovered in October, 1922, that appellant had conveyed a portion of the lots he had purchased to another and thus put it beyond its power to perform the contract it had entered into with him he would have continued to make his weekly payments on the lots he had purchased. The fact that he did so, as this court views the evidence, is convincing proof that the slight variation of the rear line of his lots made by the resurvey which lengthened the maximum line of the longest lot approximately the same distance that it shortened the minimum line of the shortest lot was contemplated by the parties when the deal was made; that appellee so recognized it, and so far sustains appellant's theory of the case as to be conclusive.

Appellee testified, however, that he kept up his payments because he was being assured throughout all that time by appellant's agent who had sold him the lots and who was making the collections that Cook would be moved from his property. The agent denied that such was the case, and testified that after appellee procured the blue print in 1922 and discovered that the resurvey of his lots complied with his contract of purchase he was fully satisfied and raised no further question for over two years, and until he ceased paying in October, 1924. During that period of time Cook was living in his dwelling house on what appellee now claims was a part of the lots he purchased. It is difficult to conclude that appellee would

have been satisfied through that period of time with mere promises and no action.

What was done by appellant to settle the controversy which arose upon appellee's failure or refusal to pay further on his contract in the latter part of 1924 so as to prevent a resort to the courts for settlement under the well settled rule in this jurisdiction is incompetent as evidence on the merits of the controversy.

The court is clearly of the opinion that when all of the facts and circumstances found in the evidence herein are considered and given their due weight, the conclusion that the chancellor erred in granting appellee the relief sought can not be escaped; and that on appellant's counterclaim it was entitled to a judgment for the balance due on the purchase price of the lots sold to appellee and for their sale to satisfy the purchase money lien.

For the reasons indicated, the judgment herein is reversed and cause remanded, with direction that a judgment in conformity herewith be entered. Judge Dietzman not sitting.